IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| UMBRA TECHNOLOGIES LTD. (UK), & UMBRA TECHNOLOGIES (US) INC., dba UMBRA TECHNOLOGIES,<br><br>*Plaintiffs,*<br><br>v.<br><br>ZSCALER, INC.,<br><br>*Defendant.* | C.A. No.:   2:25-cv-1063<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs UMBRA Technologies Ltd. (UK) ("UMBRA (UK)") and UMBRA Technologies (US) Inc. ("UMBRA (US)") (collectively "UMBRA" or "Plaintiffs"), for their Complaint against Defendant, Zscaler, Inc. ("Zscaler" or "Defendant"), allege the following:

**NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

**THE PARTIES**

2. Plaintiff UMBRA (UK) is a company organized under the laws of the United Kingdom for the British Virgin Islands with a place of business at OMC Chambers, Wickhams Cay 1, Road Town, Tortola, British Virgin Islands, United Kingdom.

3. Plaintiff UMBRA (US) is a company organized under the laws of the state of Delaware with a place of business at 4 Richmond Square, Suite 102, Providence, Rhode Island 02906.

4. Upon information and belief, Defendant Zscaler, Inc. is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business located at 120 Holger Way, San Jose, California 95134. Upon information and belief, Zscaler sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

## JURISDICTION AND VENUE

5. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §1400(b).

8. On information and belief, Zscaler has committed acts of infringement in this District and maintains an established place of business in the state of Texas including in this District, specifically at, 7950 Legacy Drive, Suite 400, Plano, Texas 75024, a regular and established place of business in this district.

9. This Court has personal jurisdiction over Zscaler under the laws of the State of Texas, due at least to their substantial business in Texas and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas.

**BACKGROUND**

**The Invention**

10.     Carlos Eduardo Oré and Joseph E. Rubenstein are inventors of U.S. patent no. 10,574,482 ("the '482 patent").  Joseph E. Rubenstein, Carlos Eduardo Oré, Jørn Allen Dose Knutsen, Fred Broussard, and Thibaud Auguste Bernard Jean Saint-Martin are inventors of U.S. patent no. 12,335,329 ("the '329 patent").  Joseph E. Rubenstein and Carlos Eduardo Oré are inventors of U.S. patent no. 12,432,161 ("the '161 patent").  Joseph E. Rubenstein, Carlos Eduardo Oré, Fred Broussard, Thibaud Auguste Bernard Jean Saint-Martin, and Jørn Allen Dose Knutsen, are inventors of U.S. patent no. 12,452,192 ("the '192 patent").  Collectively, the foregoing individuals are referred to as "the Inventors."  A true and correct copy of the '482 patent is attached as Exhibit A.  A true and correct copy of the '329 patent is attached as Exhibit B.  A true and correct copy of the '161 patent is attached as Exhibit C.  A true and correct copy of the '192 patent is attached as Exhibit D.

11.     The '482 patent, the '329 patent, the '161 patent and the '192 patent (collectively, the "patents in suit") resulted from the pioneering efforts of the Inventors in the 2010s, in areas related to secure network optimization, virtual networks including large area or global virtual networks (GVNs), next generation software-defined wide area networking (SD-WAN), advanced smart routing (ASR), slingshot interconnection systems for sending files for example via remote direct memory access (RDMA), security such as multiple perimeter firewalls and other technologies.  These efforts resulted in the development of systems and methods for improving the performance of internet connections and large networks.  For example, the inventions improve quality of service in a virtualized network.  The SD-WAN inventions provide a wide range of benefits for individuals and distributed organizations, including improved architectures

for implementing highly efficient, secure, optimized virtual WAN architectures over the top of the regular internet and other network fabrics.  The multi-perimeter firewall inventions help secure SD-WAN virtualized networks by implementing a distributed, cooperative firewall system within/at boundaries of a virtualized network.

12.     At the time of these pioneering efforts, the most widely implemented technology in use involved multiprotocol label switching, or MPLS, a networking technology that routed traffic using the shortest path based on "labels," rather than network addresses.  MPLS networks have the disadvantage of needing to transmit all traffic from the branch to a centralized data center and have limited capabilities for low latency/high performance access to cloud applications.  In addition, the security and management requirements associated with disparate traffic flows in MPLS adds to the complexity of managing network operations, thus increasing operational requirements.  The inventions claimed in the patents in suit overcome these limitations in traditional MPLS networks as well as other limitations in various prior art technologies.  As one example, the patented inventions disclosed in the patents in suit provide a number of advantages over the prior art and improve the operations of virtualized networks implementing highly efficient, secure, optimized virtual WAN architectures.

13.     Because of these significant advantages that can be achieved using various embodiments of the patented inventions, the patents in suit have significant commercial value for companies like Zscaler.  Indeed, Zscaler implements their products and services in virtualized network architectures having features which utilize the patented inventions, providing convenience and efficiency for its customers, enhancing the customer engagement and experience of its customers, and increasing the efficiency of its own operations and those of their customers and affiliates, in addition to other benefits.

**Technological Innovation**

14. The patented inventions disclosed and claimed in the '482 patent and the '161 patent (all in the same family and with matching specifications) resolve technical problems related to a multi-perimeter firewall system in a cloud/virtualized network, particularly problems related to the distribution of workload and threat information, and utilization of stateful and deep-packet inspections in a virtualized firewall system. As the '482 and '161 patents explain, one of the limitations of the prior art use of firewalls is, for example, a "firewall has traditionally been placed at the edge between one network such as a local area network (LAN) and another network such as an uplink to a broader network". (*See, e.g.*, '482 patent, Ex. A at 5:61-64; '161 patent, Ex. C at 6:04-07.) The inventions of the '482 and '161 patents increase the utility of firewalls by extending and improving their use into a virtualized network and/or cloud, thus addressing sensitivities by network administrators as to the placement of their firewalls. ('482 patent, Ex. A, at 5:56–67; '161 patent, Ex. C at 5:62-6:06.)

15. The patented inventions disclosed and claimed in the '329 patent resolve technical problems related to systems and methods of receiving and delivering content into different geographic regions via remote access point servers. As the '329 patent explains, when retrieving content from remote server locations, there is little to no control over a network path taken between servers, which can result in slow speeds and low bandwidth. (*See, e.g.*, '329 patent, Ex. B at 2:7-21.) The inventions of the '329 patent enhance regional content retrieval that can utilize a combination of smart-routing and point to multi-point topology to provide advantages of concurrent streams from multiple remote regions ('329 patent, Ex. B at 4:55-67) to allow for multiple, concurrent secure and fast streams to multiple regions with low latency and hop count ('329 patent, Ex. B at 2:27-29).

16. The patented invention disclosed and claimed in the '192 patent resolves technical problems related to systems and methods of developing and transmitting a prioritized list relating to servers available for building a tunnel in a network based on one or more records associated with a device. (See, e.g., '192 patent, Ex. D at 11:6-41.) As the '192 patent explains, among other difficulties in the prior art network systems, devices often had to interact directly with each other in order to avoid potential conflicts in building a connection between them ('192 patent, Ex. D at 16:13-19) and server availability was not prioritized for selection to build a tunnel in a network ('192 patent, Ex. D at 11:30-41). The invention of the '192 patent increases the efficiency and effectiveness of a virtualized network as, for example, an ordered server availability list can prioritize address and port combinations based on expected best performance of the tunnels to be built while also looking at other available information, such as contextual information for specific devices. ('192 patent, Ex. D at 11:6-41.)

17. The claims of the patents in suit do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the patents in suit patent recite inventive concepts that are deeply rooted in engineering technology and overcome problems specifically arising out of how to improve the reliability, speed, and efficiency of a virtualized network.

18. In addition, the claims of the patents in suit recite inventive concepts that improve the functioning of a virtualized network, particularly in overcoming the disadvantage of needing to transmit all traffic from a branch to a centralized data center and addressing the limited capabilities of an MPLS network for low latency while providing high performance access to cloud applications.

19. Moreover, the claims of the patents in suit recite inventive concepts that are not merely routine or conventional use of networking technology. Instead, the patented inventions disclosed and claimed in the patents in suit provide a plethora of new and novel solutions to specific problems related to improving the reliability, speed, and efficiency of a virtualized network.

20. The patented inventions disclosed and claimed in the patents in suit do not preempt all the ways that the claimed inventive features in a virtualized network architecture may be used to improve its reliability, speed, or efficiency, nor do the patents in suit preempt any other well-known or prior art technology.

21. Accordingly, the claims in the patents in suit each recite a combination of elements sufficient to ensure that each claim in substance and in practice amounts to significantly more than a patent-ineligible abstract idea.

**Prior Litigation**

22. The '482 patent has been asserted, with other patents, recently in *UMBRA v. Palo Alto Networks, Inc.*, Eastern District of Texas, Case No. 2:25-cv-00635 (pending), filed on June 13, 2025.

23. The '482 patent has been asserted, with other patents, recently in *UMBRA v. Fortinet, Inc.*, Eastern District of Texas, Case No. 2:25-cv-00329 (pending), filed on April 2, 2025.

24. The '482 patent has been asserted recently, with other patents, in *UMBRA v. Juniper Networks, Inc.*, District of Delaware, Case No. 1:24-cv-01288 (pending), in which Defendant waived service of the complaint on February 18, 2025.

25. The '482 patent was also previously litigated in *UMBRA v. VMware, Inc.*,

Northern District of California, Case No. 3:24-cv-01609 (dismissed).

26.   The '482 patent is presently asserted in *UMBRA v. Cisco Systems, Inc.*, Western District of Texas, Case No. 1:23-cv-00903 (pending), which is stayed at the time of this filing.

27.   The '482 patent was previously the subject of a petition to the United States Patent and Trademark Office ("USPTO") Patent Trial and Appeal Board ("PTAB"), IPR2024-00498, filed by Cisco Systems Inc., requesting Inter Partes Review ("IPR") of the claims of the '482 patent. The petition requesting institution of an IPR proceeding was denied.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 10,574,482

28.   The allegations set forth in the foregoing paragraphs are incorporated into this First Claim for Relief.

29.   On February 25, 2020, the '482 patent was duly and legally issued by the United States Patent and Trademark Office under the title "MULTI-PERIMETER FIREWALL IN THE CLOUD".

30.   UMBRA is the assignee and owner of the right, title and interest in and to the '482 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of them.

31.   Upon information and belief, Zscaler has and continues to directly infringe at least one claim of the '482 patent by selling, offering to sell, making, using, and causing to be used Zscaler systems and methods, including one or more hardware and software products for network virtualization and related services, which by way of example include but are not limited to the Zscaler products and services identified in Exhibit E hereto (the "Accused Instrumentalities" identified herein collectively as listed in Exhibits E-H).

32. Exemplary infringement analysis showing infringement of at least one claim of the '482 patent is set forth in Exhibit E. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Zscaler with respect to the '482 patent. UMBRA reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '482 patent.

33. The Accused Instrumentalities infringed and continue to infringe at least one claim of the '482 patent.

34. UMBRA has been harmed by Zscaler's infringing activities.

**COUNT II – INFRINGEMENT OF U.S. PATENT NO. 12,335,329**

35. The allegations set forth in the foregoing paragraphs are incorporated into this Second Claim for Relief.

36. On June 17, 2025, the '329 patent was duly and legally issued by the United States Patent and Trademark Office under the title "SYSTEM AND METHOD FOR CONTENT RETRIEVAL FROM REMOTE NETWORK REGIONS".

37. UMBRA is the assignee and owner of the right, title and interest in and to the '329 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of them.

38. Upon information and belief, Zscaler has and continues to directly infringe at least one claim of the '329 patent by selling, offering to sell, making, using, and causing to be used Zscaler systems and methods, including one or more hardware and software products for network virtualization and related services, which by way of example include but are not limited

to the Zscaler products and services identified in Exhibit F hereto (the "Accused Instrumentalities" identified herein collectively as listed in Exhibits E-H).

39. Exemplary infringement analysis showing infringement of at least one claim of the '329 patent is set forth in Exhibit F. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Zscaler with respect to the '329 patent. UMBRA reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '329 patent.

40. The Accused Instrumentalities infringed and continue to infringe at least one claim of the '329 patent.

41. UMBRA has been harmed by Zscaler's infringing activities.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 12,432,161

42. The allegations set forth in the foregoing paragraphs are incorporated into this Third Claim for Relief.

43. On September 30, 2025, the '161 patent was duly and legally issued by the United States Patent and Trademark Office under the title "MULTI-PERIMETER FIREWALL IN THE CLOUD".

44. UMBRA is the assignee and owner of the right, title and interest in and to the '161 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of them.

45. Upon information and belief, Zscaler has and continues to directly infringe at least one claim of the '161 patent by selling, offering to sell, making, using, and causing to be used Zscaler systems and methods, including one or more hardware and software products for

network virtualization and related services, which by way of example include but are not limited to the Zscaler products and services identified in Exhibit G hereto (the "Accused Instrumentalities" identified herein collectively as listed in Exhibits E-H).

46. Exemplary infringement analysis showing infringement of at least one claim of the '161 patent is set forth in Exhibit G. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Zscaler with respect to the '161 patent. UMBRA reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '161 patent.

47. The Accused Instrumentalities infringed and continue to infringe at least one claim of the '161 patent.

48. UMBRA has been harmed by Zscaler's infringing activities.

**COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 12,452,192**

49. The allegations set forth in the foregoing paragraphs are incorporated into this Fourth Claim for Relief.

50. On October 21, 2025, the '192 patent was duly and legally issued by the United States Patent and Trademark Office under the title "SYSTEMS AND METHODS FOR PROVIDING A GLOBAL VIRTUAL NETWORK (GVN)".

51. UMBRA is the assignee and owner of the right, title and interest in and to the '192 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of them.

52. Upon information and belief, Zscaler has and continues to directly infringe at least one claim of the '192 patent by selling, offering to sell, making, using, and causing to be

used Zscaler systems and methods, including one or more hardware and software products for network virtualization and related services, which by way of example include but are not limited to the Zscaler products and services identified in Exhibit H hereto (the "Accused Instrumentalities" identified herein collectively as listed in Exhibits E-H).

53. Exemplary infringement analysis showing infringement of at least one claim of the '192 patent is set forth in Exhibit H. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Zscaler with respect to the '192 patent. UMBRA reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '192 patent.

54. The Accused Instrumentalities infringed and continue to infringe at least one claim of the '192 patent.

55. UMBRA has been harmed by Zscaler's infringing activities.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, UMBRA demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, UMBRA demands judgment for itself and against Zscaler as follows:

A. An adjudication that Zscaler has infringed the patents in suit;

B. An award of damages to be paid by Zscaler adequate to compensate UMBRA for Zscaler's past infringement of the patents in suit, and any continuing or future infringement through the date such judgment is entered, including interest, costs,

  expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C. A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of UMBRA's reasonable attorneys' fees; and

D. An award to UMBRA of such further relief at law or in equity as the Court deems just and proper.

Dated: October 23, 2025      Respectfully submitted,

               DEVLIN LAW FIRM LLC

               */s/ Timothy Devlin*
               Timothy Devlin (DE No. 4241)
               tdevlin@devlinlawfirm.com
               James M. Lennon (DE No. 4570)
               jlennon@devlinlawfirm.com
               Patrick R. Delaney (DC Bar No. 472266)
               pdelaney@devlinlawfirm.com
               Joel W. Glazer (DE No. 6663)
               jglazer@devlinlawfirm.com
               1526 Gilpin Ave.
               Wilmington, DE 19806
               Tel: (302) 449-9010
               Fax: (302) 353-4251

               *Attorneys for Plaintiffs*
               *UMBRA Technologies Ltd. (UK), & UMBRA Technologies (US) Inc., dba UMBRA Technologies*