## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| UMBRA TECHNOLOGIES LTD. (UK), & UMBRA TECHNOLOGIES (US) INC., dba UMBRA TECHNOLOGIES, <br><br> Plaintiffs, <br><br> v. <br><br> ZSCALER, INC., <br><br> Defendant. | CIVIL ACTION NO. 2:25-cv-01063 |

## DEFENDANT ZSCALER'S MOTION TO DISMISS UMBRA'S AMENDED COMPLAINT PURSUANT TO 35 U.S.C. § 101

**TABLE OF CONTENTS**

I.      INTRODUCTION .......................................................................................... 1

II.     LEGAL STANDARDS .................................................................................. 2

    A.    Ineligibility Under Section 101................................................................ 2

    B.    Determining Patent Ineligibility On The Pleadings................................. 3

III.    ARGUMENT................................................................................................. 4

    A.    The '482 Patent Is Ineligible Under Section 101..................................... 4

        1.    The '482 patent is directed to the abstract idea of layered security checkpoints. ............................................................................ 5

        2.    The Asserted Claims of the '482 patent lack an inventive concept at *Alice* step two. ........................................................ 9

    B.    The '161 Patent Is Ineligible Under Section 101..................................... 13

        1.    The '161 patent is directed to the abstract idea of scaling resources in response to demand.............................................. 14

        2.    The Asserted Claims of the '161 patent lack an inventive concept at *Alice* step two. ........................................................ 14

    C.    The '192 Patent Is Ineligible Under Section 101..................................... 17

        1.    The '192 patent is directed to the abstract idea of determining routes based on ranking decisions............................................. 17

        2.    The Asserted Claims of the '192 patent lack an inventive concept at *Alice* step two. ........................................................ 22

    D.    The '329 Patent Is Ineligible Under Section 101..................................... 24

        1.    The '329 patent is directed to the abstract idea of retrieving content based on region. .......................................................... 25

        2.    The Asserted Claims of the '329 patent lack an inventive concept at Alice step two......................................................... 28

    E.    This Case Is Ripe for Dismissal with Prejudice...................................... 29

IV.     CONCLUSION............................................................................................. 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016)...............................................................................7, 10, 11

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016).......................................................................................26

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
  97 F.4th 1371 (Fed. Cir. 2024) ......................................................................7, 16, 21, 26

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)................................................................................................. *passim*

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
  967 F.3d 1285 (Fed. Cir. 2020)........................................................................................20

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016)..........................................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................................3

*Broadband iTV, Inc. v. Amazon.com, Inc.*,
  113 F.4th 1359 (Fed. Cir. 2024) .....................................................................................24

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018)................................................................................ *passim*

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014)........................................................................................28

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019), *cert. denied,* 589 U.S. 1187 (2020)............................2, 14, 24

*Cisco Sys., Inc. v. Uniloc USA, Inc.*,
  386 F. Supp. 3d 1185 (N.D. Cal. 2019) ......................................................................19, 20

*Cisco Sys., Inc. v. Uniloc 2017 LLC*,
  813 F. App'x 495 (Fed. Cir. 2020) ..............................................................................19, 20

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
  859 F.3d 1352 (Fed. Cir. 2017)....................................................................................4, 30

*Credit Acceptance Corp. v. Westlake Servs.*,
    859 F.3d 1044 (Fed. Cir. 2017)........................................................................22, 27

*Customedia Techs. LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020).............................................................................9

*Data Engine Techs. LLC v. Google LLC*,
    906 F.3d 999 (Fed. Cir. 2018).............................................................................18

*Data Scape Ltd. v. W. Digital Corp.*,
    No. 18-2285-DOC, 2019 WL 6391616 (C.D. Cal. July 12, 2019),
    *aff'd,* 816 F. App'x 461 (Fed. Cir. 2020)...........................................................30

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014)..............................................................................3

*Doe v. Columbia-Brazoria Indep. Sch. Dist.*,
    855 F.3d 681 (5th Cir. 2017) ................................................................................3

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
    815 F. App'x 529 (Fed. Cir. 2020) ..................................................................21, 27

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)......................................................................2, 5, 22

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)..............................................................................7

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020)..............................................................................6

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016).....................................................6, 11, 18, 29

*Free Stream Media Corp. v. Alphonso Inc.*,
    996 F.3d 1355 (Fed. Cir. 2021).....................................................2, 7, 12, 16

*Genetic Techs. Ltd. v. Merial L.L.C.*,
    818 F.3d 1369 (Fed. Cir. 2016)..............................................................................3

*HCB Fin. Corp. v. McPherson*,
    8 F.4th 335 (5th Cir. 2021) ................................................................................30

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016).............................................................................15

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
    942 F.3d 1143 (Fed. Cir. 2019)......................................................................10, 27

-iii-

*Mayo Collaborative Servs. v. Prometheus Labs. Inc.*,
    566 U.S. 66 (2012)..............................................................................................20, 24, 29

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016).............................................................................................2

*Mortg. Application Techs., LLC v. MeridianLink, Inc.*,
    839 F. App'x 520 (Fed. Cir. 2021) .......................................................................................18

*Netflix, Inc. v. Broadcom Inc.*,
    793 F. Supp. 3d 1168 (N.D. Cal. 2025) ...............................................................................23

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015)..............................................................................................3

*PersonalWeb Techs. LLC v. Google LLC*,
    8 F.4th 1310 (Fed. Cir. 2021) ...............................................................................................6

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
    696 F. App'x 1014 (Fed. Cir. 2017) ......................................................................................6

*Q Techs., Inc. v. Walmart, Inc.*,
    No. 2024-1667, 2026 WL 304827 (Fed. Cir. Feb. 5, 2026) .................................................26

*Realtime Data LLC v. Array Networks Inc.*,
    Nos. 2021-2251, 2021-2291, 2023 WL 4924814 (Fed. Cir. Aug. 2, 2023)...........................20

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017)......................................................................................12, 17

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018).............................................................................................13

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)............................................................................................3, 4

*Simio, LLC v. Flexsim Software Prods. Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020).............................................................................................22

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*,
    873 F.3d 1364 (Fed. Cir. 2017)..............................................................................................3

*TJTM Techs., LLC v. Google LLC*,
    No. 2025-1218, 2026 WL 1243344 (Fed. Cir. May 5, 2026).................................................21

*In re TLI Commc'ns Pat. Litig.*,
    823 F.3d 607 (Fed. Cir. 2016)........................................................................................16, 24

*Torus Ventures LLC v. Cawley Partners, LLC*,
No. 2:24-CV-00552-JRG, 2025 WL 1799327 (E.D. Tex. June 30, 2025) ...............................7

*Trading Techs. Int'l, Inc. v. IBG LLC*,
921 F.3d 1378 (Fed. Cir. 2019)...................................................................................3, 16

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023) ....................................................................................4, 30

*Two-Way Media Ltd. v. Comcast Cable Commc'ns LLC*,
874 F.3d 1329 (Fed. Cir. 2017)........................................................................................20

*UMBRA Techs. Ltd. (UK), et al. v. Juniper Networks, Inc.*,
No. 24-cv-01288, Dkt. 98 (D. Del. May 28, 2026)...........................................................9

*UMBRA Techs. Ltd. (UK), et al. v. Palo Alto Networks, Inc.*,
No. 25-cv-00635, Dkt. 86 (E.D. Tex. June 24, 2026)........................................................9

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
916 F.3d 1363 (Fed. Cir. 2019)..........................................................................................8

*US Pat. No. 7,679,637 LLC v. Google LLC*,
164 F.4th 1373 (Fed. Cir. 2026) ........................................................................................8

*Velocity Commc'n Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*,
No. 5:25-CV-98-RWS 2026, U.S. Dist. LEXIS 122633
(E.D. Tex. Apr. 13, 2026) ...........................................................................................19, 20

*Yu v. Apple Inc.*,
1 F.4th 1040 (Fed. Cir. 2021) .......................................................................................5, 17

**Statutes**

35 U.S.C. § 101.............................................................................................. *passim*

**Other Authorities**

8 C.F.R. § 235 ....................................................................................................................5

Fed. R. Civ. P., Rule 12(b)(6) ............................................................................................3

https://www.tsa.gov/travel/security-screening..................................................................5

## TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| 1 | Listing of Asserted Claims |
| 2 | Amendment After Final Action Under 37 C.F.R. § 1.116, dated Feb. 24. 2020, from U.S. Patent Application No. 15/563,253, which issued as U.S. Patent No. 10,756,929 |

## I.     **INTRODUCTION**

In its Amended Complaint, Plaintiffs UMBRA Technologies Ltd. (UK) and UMBRA Technologies (US) Inc. (collectively "UMBRA") accuse Defendant Zscaler, Inc. ("Zscaler") of infringing four patents that claim ineligible subject matter under Section 101: U.S. Patent Nos. 10,574,482 (the "'482 patent"), 12,432,161 (the "'161 patent"), 12,452,192 (the "'192 patent"), and 12,335,329 (the "'329 patent," and collectively, the "Asserted Patents").  Each patent takes an abstract idea—using layered security checkpoints ('482 patent), scaling resources in response to demand ('161 patent), ranking routing decisions ('192 patent), or retrieving content by region ('329 patent)—and implements it using generic, conventional computer-network components. The Federal Circuit and other courts have repeatedly held similar claims ineligible where, as here, they recite functional results employing generic equipment rather than any specific means or methods to improve well-known computer technology.

Zscaler previously moved for judgment on the pleadings that Umbra's asserted claims are ineligible under Section 101, which prompted UMBRA to file an Amended Complaint with over 50 new paragraphs. But none of these new allegations come close to avoiding ineligibility.  At best, UMBRA's new allegations describe requirements and improvements that are not reflected in the asserted claims, contradict clear statements in the patent specification, or invoke technological benefits that flow from practicing the abstract ideas themselves.  Nor has UMBRA identified any claim constructions that need to be resolved.  During the Court's mandatory meet and confer, UMBRA could not identify any construction that would change the character of the claims as a whole or supply an inventive concept where none exists.

For those reasons, and as shown below on a patent-by-patent basis, the Court should dismiss the Amended Complaint with prejudice.

## II.    LEGAL STANDARDS

### A.    Ineligibility Under Section 101

In *Alice*, the Supreme Court established a two-part analytical framework for determining eligibility under Section 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014). First, a court determines whether the claims are "directed to" a patent-ineligible concept, such as an abstract idea. *Id*. Courts have found claims to be directed to abstract ideas when their focus is a fundamental practice, a mental process, a result, or data manipulation. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768-69 (Fed. Cir. 2019), *cert. denied,* 589 U.S. 1187 (2020) (explaining fundamental practices and mere results are abstract); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016) (explaining that mental steps, results, and data manipulation are abstract). Courts also routinely find claims to be directed to abstract ideas when they recite a desired result and do not recite how that result is achieved. *See Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1363 (Fed. Cir. 2021) (explaining that claims must "have the specificity required to transform the claim from one claiming only a result to one claiming a way of achieving it") (cleaned up). While claims have been found not to be abstract when they "focus on a specific means or method that improves the relevant technology" (*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)), the alleged improvements must be to the technology itself, and cannot simply invoke "benefits that flow from performing an abstract idea in conjunction with a well-known" technology. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018).

If the claim is directed to an abstract idea, the court proceeds to step two and asks whether the claim elements, considered "both individually and 'as an ordered combination,'" recite an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Id*. at 1289-90 (citation omitted). Importantly,

the "abstract idea itself cannot supply the inventive concept, 'no matter how groundbreaking the advance.'" *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019) (citation omitted).  And "the use of generic computer components and machinery" fails to provide an "inventive concept." *Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1375 (Fed. Cir. 2017); *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) ("[A]fter *Alice*, there can remain no doubt: recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible.").

### B.    Determining Patent Ineligibility On The Pleadings

Under Rule 12(b)(6), dismissal "is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief above the speculative level." *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 685 (5th Cir. 2017). "[T]he tenet that a court must accept" as true all of the allegations contained in a complaint is inapplicable to legal conclusions, *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009), and "allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (internal quotations omitted).

Because the ultimate question of whether a claim recites patent-eligible subject matter under Section 101 is a question of law, a district court may resolve the issue of patent eligibility by way of a motion to dismiss.  *See, e.g., OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015); *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion.").  As such, a district court need not credit allegations that "contradict matters properly subject to judicial notice or by exhibit," especially when patent ineligibility" is evident from "based on intrinsic evidence"

alone. *Secured Mail Sols.*, 873 F.3d at 912 (affirming dismissal at the pleading stage despite plaintiff's allegations of inventive concepts).

The Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (collecting cases). Indeed, a patentee's assertion that the need for claim construction precludes a decision under Section 101 will be disregarded unless the patentee "propose[s] a specific claim construction or identif[ies] specific facts that need development and explain[s] why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360-61 (Fed. Cir. 2023).

## III.    ARGUMENT

### A.    The '482 Patent Is Ineligible Under Section 101.

Asserted claims 1-3 and 9[1] of the '482 patent recite ineligible subject matter under Section 101. The '482 patent is directed to a very straightforward abstract idea—using two firewall perimeters for a cloud network rather than one. Claim 1, the only asserted independent claim, is reproduced in Exhibit 1. To paraphrase its content, limitations [1.a] through [1.d] recite devices that form a network, and then limitations [1.e] through [1.h] describe first and second perimeter firewalls that inspect packets flowing into the network. Dependent claim 2 states that one of the access points can perform firewall services. Dependent claim 3 adds that the first and second firewalls are in communication, and dependent claim 9 adds that one of the firewalls includes a load balancer to add firewall resources on demand.

---

[1] UMBRA's Amended Complaint provides allegations concerning the purported patent eligibility of claim 13, which is not asserted in UMBRA's infringement contentions. For purposes of the *Alice* analysis, claim 13 appears to be materially identical to claim 1 and is ineligible for the same reasons discussed herein.

### 1.    <u>The '482 patent is directed to the abstract idea of layered security checkpoints.</u>

The '482 patent is directed to the abstract idea of layered security checkpoints.  At *Alice* step one, the Court determines whether the claims are directed to an abstract idea by examining "their character as a whole" and considering the claims' "focus" to determine if they are directed to an abstract idea.  *Elec. Power*, 830 F.3d at 1353 (cleaned up).  This analysis can also include "asking what the patent asserts to be the focus of the claimed advance over the prior art."  *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021) (citation omitted).  Here, this concept of using two layers of checkpoints is the '482 patent's clear "focus."  The '482 patent is entitled "Multi-perimeter firewall in the cloud" and its independent claim recites "A multi-perimeter firewall system."  '482 patent, Title, cl. 1.  The '482 patent's specification describes its purported solution as providing such layered security checkpoints as a multi-perimeter firewall in the cloud.  *See, e.g.*, Abstract ("Systems and methods for providing multi-perimeter firewalls via a virtual global network are disclosed"), 5:56-58 ("This invention builds upon the standard use by industry of firewalls (FW) increasing their utility value by extending perimeters into the cloud.").

The concept of layered security checkpoints is an abstract idea, and not a technological solution.  Indeed, this solution has been applied in several contexts that have nothing to do with computers.  Anyone engaging in modern air travel passes through such a multi-layered inspection—first, a TSA inspection of the flier's ID and documents, and then a more thorough inspection of their person and belongings.  *See* https://www.tsa.gov/travel/security-screening (describing TSA screening procedures).  For international travel, there are even more layers implemented by Customs and Border Patrol and the analogous agencies of other nations. *See, e.g.*, 8 C.F.R. § 235 (describing inspection process for admittance into the U.S.).

Inspecting at a security checkpoint is abstract because it is a mental process—examining

content to determine if it satisfies certain predefined rules. *See PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1317 (Fed. Cir. 2021) (explaining that claimed steps for "1) collecting data[] [and] 2) recognizing certain data within the collected data set" was an abstract "mental process."). For that reason, the idea of performing two firewall inspections is very similar to ideas that the Federal Circuit has found abstract in other cases. The closest case on point is *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1325-26 (Fed. Cir. 2020). There, the Federal Circuit examined claims reciting steps to intercept access requests and determine whether they should be permitted based on the requests' compliance with certain policies. The Federal Circuit found the claims ineligible, noting that they recited a "process that can be performed in the human mind, or by a human using a pen and paper, which we have repeatedly found unpatentable" and likened it to familiar contexts such as "office buildings" that "allow[] certain employees entrance to only certain floors." *Id.* at 1327 (internal quotations omitted).

Similarly, in *Prism Techs. LLC v. T-Mobile USA, Inc.*, the Federal Circuit examined claims that recited a process for "(1) receiving identity data from a device with a request for access to resources; (2) confirming the authenticity of the identity data associated with that device; (3) determining whether the device identified is authorized to access the resources requested; and (4) if authorized, permitting access to the requested resources." 696 F. App'x 1014, 1017 (Fed. Cir. 2017). The court found that these claims were directed to "the abstract idea of providing restricted access to resources." *Id.* (internal quotations omitted). *See also FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016) (finding that claims directed to analyzing access data pursuant to rules to determine if improper access occurred was abstract).

The asserted claims here are just as abstract. Like the cases above, they recite processes to analyze data for compliance with rules, but the claims here require that it be done twice rather than

- 6 -

once.  That distinction does not change the mental character of the claims or make them any less abstract.  *See Torus Ventures LLC v. Cawley Partners, LLC*, No. 2:24-CV-00552-JRG, 2025 WL 1799327, at *8 (E.D. Tex. June 30, 2025) ("Repeating an abstract step (such as encrypting already encrypted data) does not, by that repetition alone, amount to something inventive.").

In the context of software and computer-implemented systems, such as the one described in the '482 patent, courts also assess subject-matter eligibility by "ask[ing] whether the claims are directed to 'an improvement in the functioning of a computer,' or merely 'adding conventional computer components to well-known business practices.'"  *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016)).  The claims must recite "a specific, unconventional technological solution ... to a technological problem" to be patent eligible.  *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1306 (Fed. Cir. 2016).  On the other hand, software claims that include only "functionally-oriented steps" like "obtaining, manipulating, and displaying data" are abstract.  *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024).

The claims of the '482 patent are directed to such "functionally-oriented steps" rather than the necessary specific technological solution.  For example, the patent does not contend to have invented new devices, networks, firewalls, or processes for packet inspection.  Instead, the only statement the '482 patent makes about potentially overcoming some problem is, as noted in UMBRA's complaint, that firewalls have "traditionally been placed at the edge between one network such as a local area network (LAN) and another network such as [its] uplink to a broader network."  Amended Complaint ¶ 16 (citing '482 patent, at 5:61-64).  But if this was a problem, nothing in the claims recites *how* it was solved.  *See Free Stream Media*, 996 F.3d at 1363 ("a claim must have the specificity required to transform the claim from one claiming only a result to

- 7 -

one claiming a way of achieving it.") (cleaned up).  Instead, the patent states that "cloud firewalls

… can be off the shelf."  '482 patent, 15:26-29.  The claims merely recite a network with two

layers of generic firewalls performing two types of known data inspection.  And to the extent there

was any technological challenge to overcome in figuring out how to put *two* firewalls in the cloud,

the '482 patent fails to claim it and instead recites the abstract *result* of a cloud-based network with

two layers of security checkpoints.  *See US Pat. No. 7,679,637 LLC v. Google LLC*, 164 F.4th

1373, 1377 (Fed. Cir. 2026) (holding claims to be abstract when "they do not describe *how* the

alleged goal … is achieved") (citations and internal quotations omitted).

UMBRA's allegations to the contrary do not change the result.  First, the amended

complaint alleges that two firewalls allow for "more efficient and flexible use of security

perimeters nearer the [sic] sources of traffic, while addressing sensitivities by network

administrators as to the placement of their firewalls." The claims, however, recite nothing about

the how close the firewalls must be placed to traffic, nor is there any limitation supporting

UMBRA's puffery on efficiency and flexibility.  Amended Complaint ¶ 16; *Univ. of Fla. Rsch.

Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) (affirming patent as invalid

when the claims did not recite any specific improvement to the way computers operate).  Second,

UMBRA asserts that the two-firewalls limitation leads to the technical improvement of "reduc[ing]

the volume of traffic that an individual firewall must scan" (*id.* ¶ 20). that, however, is a non-

technical benefit that "flows from" employing the abstract solution of layered security checkpoints

*in any context*.  *BSG Tech*, 899 F.3d at 1288 (explaining that "benefits that flow from performing

an abstract idea in conjunction with a well-known" technology do not render a claim nonabstract).

Obviously, when the first layer catches violations, the second layer will have less to consider,

regardless of whether those layers are firewalls, TSA agents, or otherwise.  Third, UMBRA alleges

- 8 -

that using two security checkpoints solves computer specific problems by providing a "real-time, scalable, and automated approach to detecting network threats" to prevent the "delays on the order of a millisecond" that humans may notice. Amended Complaint ¶ 41. These automation and speed benefits, however, are the benefits of computer implementation that the Federal Circuit has confirmed are insufficient as a matter of law to render a patent non-abstract. *See Customedia Techs. LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020) (explaining that "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer [is] insufficient to render the claims patent eligible as an improvement to computer functionality").

### 2.    The Asserted Claims of the '482 patent lack an inventive concept at *Alice* step two.

Beyond the abstract idea of layered security checkpoints, the '482 patent recites nothing that could constitute an inventive concept. Examining the limitations of claim 1 individually, they each recite nothing but conventional and generic networking components and functionality. The preamble merely recites that the claimed double firewall idea is to be implemented in the well-known, particular technological environment of a global virtual network. *See* '482 patent, 4:62-5:24 (describing a GVN as a conventional virtual network "on top of the internet," using a "combination of" conventional components like "a hardware (HW) End Point Device (EPD) with installed software (SW), databases (DB) and other automated modules"); *see also Alice*, 573 U.S. at 223 (explaining that it is not inventive to limit claims to a "particular technological environment").[2] In its Amended Complaint, UMBRA makes much of the fact that claim 1's

---

[2] UMBRA is litigating the '482 patent in at least two other cases that have proceeded to claim construction. *UMBRA Techs. Ltd. (UK), et al. v. Juniper Networks, Inc.*, No. 24-cv-01288, Dkt. 98 at 5 (D. Del. May 28, 2026); *UMBRA Techs. Ltd. (UK), et al. v. Palo Alto Networks, Inc.*, No. 25-cv-00635, Dkt. 86 at 1 (E.D. Tex. June 24, 2026). In both cases, the only term from the '482 patent that UMBRA sought to construe was "global virtual network," which it proposed should be construed as "a virtual overlay network constructed at least in part on top of the public internet." This construction, even if adopted, is not material to the Section 101 analysis.

preamble recites a "global virtual network," but admits that these networks utilize existing, conventional ways of connecting computers as "building blocks." Amended Complaint ¶¶ 13-14. Further, even if such a virtual network were unconventional, this limitation would still fail to provide an inventive concept as a matter of law, because nowhere does the claim say anything about how such a purportedly novel virtual network is created. *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019) ("To be patent-eligible, the claims must recite a specific means or method that solves a problem in an existing technological process."). Instead, the claim refers to it—only in preamble—as the "particular technological environment" wherein the idea of using two security checkpoints is implemented. *Alice*, 573 U.S. at 223 (explaining that limiting claims to a technological environment does not render them non-abstract).

The remaining limitations are likewise not inventive. The recited devices—the "egress ingress point device," first and second "access point servers," "endpoint device" and "firewalls"— are all described as generic computer devices. *See Affinity Labs of Tex.,* 838 F.3d at 1270 (finding that claim limitations were conventional where patentee made "no claim that it invented any of those components or their basic functions, nor does it suggest that those components, at that level of generality, were unknown in the art as of the priority date"). UMBRA's Amended Complaint alleges that these devices are not conventional because they are subject to unclaimed "further modification that renders them non-conventional" (*see* Amended Complaint ¶¶ 25-29, 37-39), but the specification shows otherwise. Specifically, the '482 patent explains that the egress ingress point device is merely a device at the edge, either between the open internet and an organization's internal network or between two networks (e.g., between a virtual network and the internet). '482 patent, 13:16-21. The "access point servers" are described as generic servers with generic components: a "processor CPU[s]", "RAM" and "network interface[s]". *Id.*, 16:4-6. The claimed

"end point device" refers to any generic user device on the network. *Id.*, 15:62-65. And the '482 patent admits the claimed two firewalls "can be off the shelf." *Id.*, 15:26-29. The only "modification" that the claims could require (despite reciting none) is the use of known software techniques to program these devices to carry out the abstract idea of providing two security checkpoints.

Claim 1's functional limitations are likewise generic and not inventive. UMBRA alleges that the "stateful packet inspection" performed by the first firewall and the "deep packet inspection" performed by the second firewall are somehow inventive or directed to a computer-specific problem, but the specification makes clear that both were known types of packet inspection. *See* '482 patent, 9:56-10:15 (describing both known types of packet inspection), 15:26-29 (describing both types of inspection as capable of being carried out by "off the shelf" firewalls). Put differently, it doesn't matter if these ways of inspecting are "inherently computational" (Amended Complaint ¶ 19), because they are nonetheless admittedly conventional, known ways of carrying out inspections in the networking context. Similarly, contrary to UMBRA's allegations (Amended Complaint ¶¶ 17, 34). the '482 patent also makes "no claim that it invented" claim 1's final limitation requiring that deep packet inspection be performed on a cloned copy or recite any mechanism for such an inspection. Rather, it describes that inspection as being performed by conventional "off the shelf" firewalls. *See Affinity Labs*, 838 F.3d at 1270; '482 patent, 14:60-63 (explaining that DPI of cloned copy is performed by same FW DPI 12-444 that was described as "off the shelf" at 15:24-29). Moreover, as discussed above, these limitations amount to nothing more than analyzing data to determine if it complies with certain rules, and are themselves abstract and not inventive as a matter of law. *See, e.g.*, *FairWarning*, 839 F.3d at 1093 (finding claims directed to analyzing data pursuant to rules were abstract).

The limitations in the dependent claims also provide no inventive concept when examined individually and, notably, UMBRA has not attempted to allege otherwise in its amended complaint. Claim 2 recites that one of the access points is configured to provide firewall services, essentially specifying that another generic device performs the generic functionalities that claim 1 already requires. Even if that could qualify as inventive, the claim says nothing about the "way of achieving" this configuration. *See Free Stream Media*, 996 F.3d at 1363. Claim 3 recites that the first firewall and second firewall are connected by a communication path. That two devices on the same network can be in communication is not even arguably inventive, and that a first inspector and second inspector might benefit from communicating is itself abstract (e.g., the building lobby receptionist calling up to the office front desk). *BSG Tech*, 899 F.3d at 1288 (improvements must be to the technology itself, and not simply invoke "benefits that flow from performing an abstract idea in conjunction with a well-known" technology). Claim 9 recites that one of the firewalls will include a load balancer to allocate more firewall resources as demand requires. But, as explained in more detail below with regard to the '161 patent, this is just the solution of increasing resources to address demand—another abstract idea. It is the same non-technical solution that is applied when the TSA opens more security checkpoints to process travelers in parallel when the lines get too long. Adding this abstract idea to the already abstract claims does not provide an inventive concept. *See RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (explaining that adding two abstract ideas together does not provide an inventive concept).

Examining all these limitations as an ordered combination reveals no inventive concept. As explained above, the claim recites a network comprising generic network components with firewalls performing generic firewall functionalities, but adds that there are two layers of such firewalls—i.e., a generic implementation of layered security checkpoints in the context of a

- 12 -

computer network that is ineligible for patenting.[3]

### B.        The '161 Patent Is Ineligible Under Section 101.

UMBRA asserts claims 1-3, 6, and 9 of the '161 patent, each of which fails to recite patentable subject matter.  The '161 patent is related to and shares the same specification as the '482 patent, and its claims recite a similar computer network with two firewalls.  The primary difference is that, like dependent claim 9 of the '482 patent, the '161 patent's claims recite providing more virtual firewalls to perform inspections in parallel to meet surging demand.  Claim 1 is the only asserted independent claim, and is reproduced in Exhibit 1.  It recites [1.a] a virtual cloud network with a [1.b] control node that determines how many virtual firewalls are needed based on demand.  Thereafter, any new virtual firewalls are [1.c] configured to be part of and [1.d] operate as part of the first firewall perimeter.  Then [1.e] packet traffic that clears the first firewall gets forwarded along and [1.f] some of it encounters a second firewall.

The asserted dependent claims add minor details.  Claim 2 adds that there are multiple endpoints that exist as part of this virtual network and send traffic through the firewalls.  Claim 3 adds that the two firewalls and the secure endpoint can communicate with the control node via a back channel.  Claim 6 adds that the first firewall perimeter performs a stateful inspection (as was specified by claim 1 of the '482 patent).  Claim 9, which depends from claim 6, specifies that there is a cloud-based load balancer that balances the load of traffic between the parallel firewalls.

---

[3] For this patent as well as the others, UMBRA makes several allegations discussing the prosecution history and pointing out that the U.S. Patent Office determined that the claims were novel and non-obvious.  *See* Amended Complaint, ¶¶ 21, 22, 24, 59.  That is true of every one of the hundreds of patent that has been invalidated under *Alice*.  Further, the purported novelty of a particular combination of conventional elements does not render it non-abstract.  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (explaining that it is not "enough for subject-matter eligibility that claimed techniques be novel and nonobvious in light of prior art").

1.   **The '161 patent is directed to the abstract idea of scaling resources in response to demand.**

The '161 patent takes the abstract concept of the claims recited in the '482 patent—layered security checkpoints—and adds a new abstract idea to it:  scaling resources in response to demand. The "character as a whole" of each of the asserted claims of the '161 patent revolves around this concept: sensing demand and increasing resources to address that demand, as applied in the context of a network with two layers of firewalls.

Scaling resources based on demand is undoubtedly an abstract idea.  It is a computer-agnostic solution that people have employed in countless contexts. TSA deploying more inspectors to address an airport backlog is one example, and a grocery store calling for more cashiers when the lines become long is another.  Thus, it is unsurprising that the Federal Circuit has explained that "[d]emand response is itself an abstract concept." *ChargePoint, Inc.,* 920 F.3d at 771.

Nor are these claims saved from abstraction by reciting any computer improvement. UMBRA's Amended Complaint alleges that the '161 patent provides the same insufficient improvements discussed above for the '482 patent. *See* Section II.A.1, *supra*.  When discussing the '161 patent specifically, UMBRA's Amended Complaint simply employs technical jargon to describe the very same idea explained above—that the claimed system will "determine, on demand, how many virtual firewall instances" are needed, and provide them for "traffic ingressing." Amended Complaint ¶ 23.  But the benefits achieved by the alleged improvement of scaling up firewalls in response to demand simply "flow from performing an abstract idea in conjunction" with a generic virtual network, and do not avoid abstractness at step 1.  *BSG Tech*, 899 F.3d at 1288.

2.   **The Asserted Claims of the '161 patent lack an inventive concept at *Alice* step two.**

The asserted claims of the '161 patent lack an inventive concept when considered either

- 14 -

individually or as an ordered combination. Limitation [1.a] describes the act of forming a virtual network connection between a cloud location and an endpoint, both of which are conventional computer components. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) (explaining that claims include no inventive concept when they "do[] no more than require a generic computer to perform generic computer functions.") (citation omitted). The '161 patent admits that "online systems such as thin-clients to cloud-based servers" pre-existed the patent. '161 Patent, 1:35-39. It also admits that geographically expansive WAN networks and virtual network connections were known computer functionality. *Id.*, 2:6-22 (describing LAN's Internet traffic being routed through a centralized gateway at corporate headquarters rather than directly to nearby Internet servers); 4:53-55 (describing VPN connections). Similarly, because VPNs, tunnels, and firewalls are "over-the-top" virtual networks, the '161 patent makes clear that such networks were pre-existing technology as well. *Id.,* 4:53-55; *see also id.*, 2:32-34 (describing network devices as "usually hav[ing] tunneling options built into their firmware"), 11:63-12:3 (describing a firewall as "OTT"); 12:19-20 (explaining that "routes could be OTT internet, over backbone, over dark fiber, or other related routing"). Limitation [1.b] describes a control node, essentially a load balancer (as described in the specification at 11:39-44), that can instantiate more virtual firewalls, but the '161 patent admits that load balancers were a known "off the shelf" technology. *Id.*, 15:38-41 ("load balancers [and] cloud firewalls … can be off the shelf provided by other vendors."). The remaining limitations simply describe those firewalls operating as firewalls do—inspecting packets and allowing packets to be forwarded along to their destination. Thus, the '161 patent itself contradicts UMBRA's allegations that certain limitations of the '161 patent are not generic or conventional because they "require further modification." Amended Complaint ¶¶ 23-29. And, as with the other patents, the only "modification" that could be required

- 15 -

by the claims is programming these admittedly generic components to implement the abstract idea recited in the claims. That necessarily cannot provide an inventive concept. *Trading Techsl*, 921 F.3d at 1385 ("T]he abstract idea itself cannot supply the inventive concept.").

UMBRA's Amended Complaint makes no allegations that the '161 patent's dependent claims provide any inventive concept. Claim 2 adds only that the claimed network comprises a plurality of secure endpoints—*i.e.*, a larger network—not a more inventive one. Claim 3 adds that devices can communicate with one another using a back channel, which the patent describes as involving API calls to communicate through an intermediary server. Such communication at a security checkpoint is common in any context, and does not make the claims any less abstract. *AI Visualize*, 97 F.4th at 1378 (explaining that steps for transmitting data are generally abstract). Further, the claim says nothing about *how* this back channel is formed. *See Free Stream Media*, 996 F.3d at 1363. Claim 6 specifies that the firewalls will perform stateful packet inspection, an admittedly well-known type of packet inspection. '161 patent, 10:1-16. Claim 9 adds only that the firewalls receive their allocated traffic from a load balancer, which (1) recites the equally abstract concept of balancing traffic and (2) involves admittedly "off the shelf" technology. *Id.*, 15:38-41.

Examining the claims as an ordered combination also reveals no inventive concept. The claims begin by defining a particular technological environment (a global virtual network), then describe connecting certain devices to that network, and then describe employing the common solution of scaling resources (in this case, firewall resources) in response to demand. But limiting this basic solution to the field of virtual networking does not make it inventive or non-abstract. *See In re TLI Commc'ns Pat. Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (limiting the use of the abstract idea to a mobile phone context "does not make the claims any less abstract"). And

- 16 -

combining this with the also-abstract idea of two layers of firewalls is similarly insufficient. *See RecogniCorp*, 855 F.3d at 1327 (adding two abstract ideas together is not inventive).

## C.    The '192 Patent Is Ineligible Under Section 101.

UMBRA asserts that Zscaler infringes claims 1-6 of the '192 patent, all of which are ineligible. The '192 patent purports to address problems relating to latency bottlenecks in large wide area network (WAN) configurations. '192 patent, 1:38-56, 2:30-50. The '192 patent purports to address this communications problem with "control server(s)" that determine delivery routes based on rankings. This concept is recited in claim 1, which is provided in Exhibit 1.

Although the claim is lengthy, its subject matter is straightforward. Limitations [1.a] and [1.b] describe endpoints and access servers, which are conventional WAN network components. '192 patent, 1:50-57, 2:30-43. Limitation [1.c] and its subparts describe one or more control servers that determine the access point server through which an endpoint device's communications should be routed. It does so by analyzing data about the devices and using some manner of ranked list. Limitation [1.c.iii.B] and Limitation [1.d] and its sub parts then recite forming the network connection between the endpoint and determined access server. As UMBRA alleges, the purportedly novel solution reflected in these claims is the idea of using "an ordered server availability list," *i.e.*, the claimed "ranked list," to make routing determinations. Amended Complaint ¶ 54.

### 1.    The '192 patent is directed to the abstract idea of determining routes based on ranking decisions.

The asserted claims of the '192 patent are each directed to the abstract idea of determining routes based on ranking decisions. Here, as explained above, this idea of determining routes based on ranking decisions is the "focus" of the claims. *Yu*, 1 F.4th at 1043. Independent claim 1 recites this concept of determining routes using a ranked list in the context of a conventional virtual

- 17 -

network—and the rest of the claim recites only the steps for maintaining the undefined information used to make that decision and the commonplace steps for setting up the connections once the determination has been made. The specification confirms that the "focus" of the claimed invention is determining routing decisions. '192 patent, Abstract, 2:53-61. The prosecution history confirms that the claimed advance over the prior art is the claimed "ranked list." *See* Ex. 2 (2/24/2020 Amendment) at 6-7 (to secure allowance of ancestor patent, amending claims to add ranking limitations and arguing that the prior art did not teach the use of such a ranked list.).[4] UMBRA itself likewise touts the patent's solution as the use of this "an ordered server availability list." Amended Complaint ¶ 54. And as explained below, none of the dependent claims fundamentally changes the focus of the claims from this abstract concept. Thus, "[t]he claims, prosecution history, and specification … make clear that the focus of the claims, with respect to the prior art, is the" abstract idea of determining routes based on ranking decisions. *Mortg. Application Techs., LLC v. MeridianLink, Inc.*, 839 F. App'x 520, 525 (Fed. Cir. 2021).

This idea is impermissibly abstract under step 1 of *Alice*. The idea of making routing decisions using a ranked list is abstract because it is not a technological solution—it is a fundamental logistical solution that has been applied in other contexts since long before the rise of virtual computer networks. *See BSG Tech*, 899 F.3d at 1286 (explaining that fundamental, long prevalent practice or a well-established method of organizing activity qualifies as an abstract idea). Any enterprise operating a logistics or delivery network must make routing decisions by choosing the best options from alternatives—implicitly using a ranked list. The particular flights offered by airlines, and the particular delivery pathways used by the post office, inherently reflect this type

---

[4] *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018) (explaining that prosecution histories constitute public records that may be considered at the pleading stage).

of decision making. *FairWarning*, 839 F.3d at 1094 (explaining claims are abstract because they "merely implement an old practice in a new environment").

This idea is very similar to the ideas at the core of other patents that courts have struck down as ineligible. In *Cisco Sys., Inc. v. Uniloc USA, Inc.*, 386 F. Supp. 3d 1185 (N.D. Cal. 2019), *aff'd sub nom. Cisco Sys., Inc. v. Uniloc 2017 LLC*, 813 F. App'x 495 (Fed. Cir. 2020), the patent at issue related to "an ad-hoc radio communication system" that "determin[ed] a master/slave rank of each station in the network representative of the station's suitability for acting as master in the network using antenna performance characteristics of each station in view of the antenna's local environment and enabl[ed] a station with the highest rank to be master." *Id.* at 1192. The court found the patent's claims to be "directed to the abstract idea of ranking stations based on antenna performance characteristics and selecting the station with the highest rank to act as master in a network." *Id.* at 1193. This idea was abstract, the court explained, because the "ranking" method at the core of the claim "could be performed by a mental process" and because the claim "fail[ed] to provide any technical details on how" the "desired result" of a "more operationally efficient ad-hoc network" was achieved. *Id.* at 1195. The Federal Circuit affirmed because "[t]he claim does not specify any particular metric or method for ranking," "the entirety of the claim is simply the abstract idea and nothing more." *Cisco*, 813 F. App'x at 498.

Similarly, in *Velocity Commc'n Techs., LLC v. OnePlus Tech. (Shenzhen) Co.,* a court in this district reached the same conclusion concerning a claim that it found to be directed to "the abstract idea of 'iteratively adjusting, analyzing, and ranking the quality of radio frequency signals.'" No. 5:25-CV-98-RWS 2026, U.S. Dist. LEXIS 122633, at *18 (E.D. Tex. Apr. 13, 2026) (citations omitted). The court ruled that this claim was abstract at step 1, noting that it "simply recites measuring multiple signal qualities and selecting the highest one without any

approach for implementation." *Id.* at \*19-20. And, for the same reasons, the court found that "[t]he claim does not offer any improvement to radio receiver technology either." *Id.* at \*20.

The '192 patent's claims are even more abstract than those in *Cisco* and *Velocity*. Unlike those claims—which at least specified that the ranking was based on "performance characteristics" and "signal quality" respectively—the '192 patent claims are agnostic as to what information is used to generate the ranked list or upon what criteria the access servers are ranked. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (finding claims directed to routing information abstract because they "[did] not sufficiently describe how to achieve these results in a non-abstract way"). They simply require that the decision be made using a mental process that is inherently employed in all deliberate decision making. *Mayo Collaborative Servs. v. Prometheus Labs. Inc.*, 566 U.S. 66, 71 (2012) (explaining that "mental processes[] and abstract intellectual concepts are not patentable") (citation omitted).

None of the allegations in UMBRA's complaint demonstrate otherwise. Citing the specification, UMBRA alleges that the '192 patent is not abstract because it "resolve[d] technical problems," stating that "[t]he invention of the '192 patent increases the efficiency and effectiveness of a virtual overlay network as, for example, an ordered server availability list can prioritize address and port combinations based on expected best performance of the tunnels to be built while also looking at other available information, such as contextual information for specific devices." Amended Complaint ¶ 54. But the Federal Circuit has made clear that "the claim itself … must go beyond stating a functional result" and must "identify 'how' th[e] functional result is achieved by limiting the claim scope to structures specified at some level of concreteness, in the case of a product claim, or to concrete action, in the case of a method claim." *Realtime Data LLC v. Array Networks Inc.*, Nos. 2021-2251, 2021-2291, 2023 WL 4924814 at \*8 (Fed. Cir. Aug. 2,

2023) (citing *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1302 (Fed. Cir. 2020)). Here, there is no language in any of the asserted claims that describes ranking based on "expected best performance of the tunnels to be built while also looking at other available information, such as contextual information for specific devices," as UMBRA alleges. Amended Complaint ¶ 54; *see Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 533 (Fed. Cir. 2020) (explaining that the patent must "describe *how* to solve the problem" and "that solution has to be evident from the claims") (emphasis in original). Instead, every claim limitation merely recites some manner of high-level, abstract data manipulation, such as "configuring" and "establishing" various network connections. *See AI Visualize*, 97 F.4th at 1378 (explaining that claims reciting high level steps for manipulating data are abstract).

Nor do UMBRA's allegations concerning other purported technological improvements change the result. UMBRA alleges that the claimed invention replaces "manual, static reconfiguration of a point-to-point tunnel between two devices" with the claimed process that "automatically determines … which peer access point server is best suited to serve" that device. Amended Complaint ¶ 56. This, however, simply describes the computerization of the abstract idea of routing being applied in the networking context. It is a good idea to optimize routes, but migrating that good idea to the particular context of computer networks does not render it patent eligible. *TJTM Techs., LLC v. Google LLC*, No. 2025-1218, 2026 WL 1243344, at *3 (Fed. Cir. May 5, 2026) (explaining that "merely applying an abstract idea to a 'particular technological environment,' ... [i]s not enough to transform the underlying idea into something patent eligible") (citation omitted). Further, UMBRA's allegations that this process can be performed "without requiring manual configuration by a user" (Amended Complaint ¶ 55) and provides improvements by causing its components to "dynamically determine" the best routes and "automatically seek" to

establish them (*id.* ¶ 68) likewise does nothing to save the claims.  Using computers to automate manual processes has repeatedly been found to be abstract. *See Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("[M]ere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology). Accordingly, "this is therefore not a case in which a complaint's allegations prevent resolving the eligibility question as a matter of law."  *Simio, LLC v. Flexsim Software Prods. Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) (citation and internal quotation marks omitted) (affirming dismissal when allegations, taken as true, failed to show non-abstractness as a matter of law).

### 2.    The Asserted Claims of the '192 patent lack an inventive concept at *Alice* step two.

Because the asserted claims of the '192 patent are directed to an abstract idea, the Court must then consider whether the claim elements recite an "inventive concept" *Alice*, 573 U.S. at 218.  The asserted claims lack an inventive concept because they do not recite anything significantly more than the abstract idea of providing routing decisions based on a ranked list.

Considering the claim elements individually reveals no inventive concept.  The '192 specification describes the claimed "endpoint devices," "access point servers," and "control servers" as standard computer devices, including CPUs, RAM, databases, hierarchically stored files, and various software modules.  *See* '192 patent, 29:54-30:30.  The '192 patent thus admits that all the physical components recited in the asserted claims are generic, "off-the-shelf, conventional computer, network, and display technology." *Elec. Power Group.*, 830 F.3d at 1355. It further admits that virtual networks and forming secure tunnels for communication were commonplace.  '192 patent, 2:53-59, 7:4-29 ("A software (SW) based virtual private network (VPN) offers privacy via a tunnel between a client device and a VPN server."); *id.* at 2:30-36 (describing existing protocols for forming secure tunnels).  Courts have consistently recognized

- 22 -

that using conventional virtualization concepts does not itself supply an inventive concept. *See, e.g.*, *Netflix, Inc. v. Broadcom Inc.*, 793 F. Supp. 3d 1168, 1190 (N.D. Cal. 2025) (finding that "mapping of VMs" (virtual machines) was conventional and did not provide an inventive concept).

UMBRA's allegations about these devices do not change the result. UMBRA alleges that the "specific technical mechanism" of a central device registry that determines and implements routing decisions was unconventional in VPN architectures (Amended Complaint ¶ 57). As explained above, however, the patent admits that this device is simply a generic computer programmed to implement the abstract idea of configuring routes based on a ranked list. UMBRA also alleges that the control server is not a conventional load balancer and can cause new connections to form, but that too does not defeat abstractness. Amended Complaint ¶ 58. A non-computer logistic network can establish new routes using ranked lists as well, and claiming the mere result of doing so in this context does not make the idea any less abstract. And, as with the other patents, UMBRA's allegations that the various conventional components are "modified" to implement the claimed abstract idea (Amended Complaint ¶¶ 61-63) likewise provides no inventive concept, as merely programming generic devices to carry out abstract processes is per se not inventive. *Alice,* 573 U.S. at 224 (holding that generic computer implementation of an abstract idea is not patentable).

The individual limitations of the dependent claims add no inventive concept. Claim 2 specifies that some of the access point servers may be cloud-based virtual access point servers, which merely limits the claim to a particular cloud-based technological environment. *See Alice*, 573 U.S. at 223 (explaining that "limiting the use of an abstract idea to a particular technological environment" is not enough for patent eligibility) (cleaned up). Claim 3 specifies that those cloud-based servers may be instantiated by the control servers based on a load factor, but the patent

- 23 -

admits that load balancers were "conventional" technology (*see* '192 patent, 10:40-47). Further, as explained at length above in connection with the '161 patent, providing more servers based on load is itself an abstract idea—increasing resources based on demand—and cannot provide an inventive concept. *See ChargePoint*, 920 F.3d at 771 (explaining that "[d]emand response is itself an abstract concept"); *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1368 (Fed. Cir. 2024) (holding that combining two abstract ideas does not render a claim less abstract). Dependent claims 4, 5, and 6 together add that the endpoint device performs a function to manage routing over the established paths, which simply describes a part of the abstract idea itself—the endpoint's use of the routes once they have been established using the ranked list.

Examining the claim elements as an ordered combination reveals no inventive concept. Claim 1 begins by identifying the generic components that make up the network, then describes a basic data gathering step, followed by the abstract idea of somehow using that gathered data to determine network communication paths using the ranked list. Claim 1 then concludes by describing the conventional steps for establishing those network paths. *See Mayo*, 566 U.S. at 79 (explaining that adding insignificant post-solution activity does not provide an inventive concept). And, as explained above, the dependent claims add only minor limitations that do not fundamentally change the fact that these claims recite using a ranked list to make routing decisions in a computer networking context. *See TLI Commc'ns*, 823 F.3d at 613 (explaining that limiting the use of the abstract idea to a mobile phone context "does not make the claims any less abstract").

### D.       The '329 Patent Is Ineligible Under Section 101.

Asserted claims 1, 4, 5, 15, and 17 of the '329 patent are each ineligible under Section 101. The '329 patent explains how conventional content delivery networks ("CDNs") have greatly reduced latency that internet users experience by allowing internet content to be hosted in closer geographic proximity to requesting devices. *See* '329 patent, 1:55-65. The '329 patent contends

that this creates a problem when, *e.g.*, websites use "a geo-location mechanism such as a map marker" to provide requesters with region-specific versions of their content, even when "the end user might desire content to be served from a different geographic location." *Id*., 2:4-6. The '329 patent acknowledges that out-of-region content can be obtained using proxies and VPNs, but argues that they do not offer adequate control over the network path. *Id*., 2:7-25.

The '329 patent's claims, however, are vague and do not directly address these problems. Instead, they simply recite the broad concept of retrieving content based on region in a conventional CDN network. Claim 1 is provided in Exhibit 1. Reading through the technical jargon, claim 1 recites [1.a] a network device that sits in between client devices and regional CDN servers (i.e., "second network devices") that must be [1.b] programmed to receive a content request from a client device that includes some "indication" of the request's target region, request that content from the region's CDN server, and then relay that content back to the requesting device.

Claims 4, 5, and 15 depend from claim 1 and recite additional, conventional limitations, such as the use of secure tunnels and DNS lookups. Claim 17 is an independent claim that largely recites the same substance as claim 1, but in method form. Thus, each asserted claim is directed to the same abstract idea of retrieving content based on region.

### 1. The '329 patent is directed to the abstract idea of retrieving content based on region.

The "focus" of each asserted claim in the '329 patent is the idea of retrieving content based on region. The patent's title makes this clear: "System and method for content retrieval from remote network regions." '329 patent, Title. The specification explains that the goal of the patent was to provide a way for users to be "served" with content "from a different region." '329 patent, 1:66-2:30. The idea of retrieving and delivering content based on region is indisputably abstract. As with the '192 patent, this concept long predates computer networks and is a widespread solution

that is frequently used in other types of logistic networks.  The same process occurs whenever a local retailer relays a customer's order to a regional warehouse and then delivers the goods to the customer upon arrival—claim 1 simply migrates this basic framework to the Internet.

The case *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016), involved a nearly identical abstract idea.  The claim at issue there recited a system that would allow for streaming regional broadcast signals to cellular telephones located outside the region served by the regional broadcaster.  *Id.* at 1255.  The Federal Circuit affirmed the district court's holding that the claims were ineligible, explaining that "[t]he concept of providing out-of-region access to regional broadcast content is an abstract idea, as that term is used in the section 101 context." *Id.* at 1258.  As the court explained, "[t]he practice of conveying regional content to out-of-region recipients has been employed by nearly every form of media that has a local distribution."  *Id.*  The same is true of the idea at the core of the '329 patent—it simply allows for the conveying of out-of-region internet content rather than broadcast content.

The asserted claims of the '329 patent are also abstract because they fail to provide for any sort of technological improvement.  Instead, they merely describe a series of data transmissions at a high level of generality.  *AI Visualize*, 97 F.4th at 1378 (holding that claims reciting general data manipulation steps, including transmitting data, were abstract).  There is no assertion in the '329 patent that any of the "client devices," "network devices," or content servers are somehow improved by relaying the commonplace communications recited by the claims.  *See Q Techs., Inc. v. Walmart, Inc.*, No. 2024-1667, 2026 WL 304827, at *2 (Fed. Cir. Feb. 5, 2026) ("The use of location or proximity information merely limits when or with whom content is shared, which does not render the claims any less abstract, but instead reflects the application of an abstract idea using generic networking components operating in their conventional manner.").

- 26 -

Nor do the allegations in UMBRA's Amended Complaint recite any technological improvement reflected in the claims. UMBRA alleges that the '329 patent provides for a technological improvement because it "uses a secured trusted connection," allows "multiple client devices" to "access the content delivery network device concurrently" and allows for routing of DNS request based on the desired target region." Amended Complaint ¶ 43. The fatal problem, however, is that the '329 patent's claims do not actually recite these alleged improvements. *Dropbox*, 815 F. App'x at 535 (rejecting argument that claims were directed to a technological improvement when the purported solution was not recited in the claims). Independent claim 1 say nothing about how to make a secure trusted connection—it merely refers to "secure" connections" and "securely" communicating as a desired result. *See Koninklijke KPN*, 942 F.3d at 1150 ("To be patent-eligible, the claims must recite a specific means or method that solves a problem in an existing technological process."). Nor does claim 1 say anything about multiple client devices acting concurrently, a concept that is instead recited only in *non-asserted* claims 2 and 3. The routing of the secure request using DNS information is recited in dependent claim 15, but that is not even arguably an improvement, as the patent admits that DNS lookups are a conventional part of "how the internet works without and with content delivery networks (CDN) delivering content from Host Servers to Host Clients." '329 patent, 5:27-29.

UMBRA's other allegations that the '329 patent provides a technological improvement because it permits out-of-region requests to be made without needing to manually make the needed connections is also not a technological improvement. Amended Complaint ¶¶ 45, 46, 50, 51. Courts have repeatedly found claims that automating an abstract idea with conventional software programming is ineligible as a matter of law. *See Credit Acceptance Corp*, 859 F.3d at 1055 (explaining that automating manual process does not improve computer technology).

- 27 -

### 2.    The Asserted Claims of the '329 patent lack an inventive concept at Alice step two.

The claims of the '329 patent lack any inventive concept when considered both individually and as an ordered combination. Looking to the individually recited components of the asserted independent claims, the recited "processor(s)," "end user devices," "second network devices," and "network interfaces" are indisputably generic computer components. *See, e.g.*, '329 patent, 11:8-23 (describing network interfaces and conventional hardware). The recited functionalities—receiving and making "secure requests" for content, relaying those requests to other devices, and forwarding the received content back to where it was requested—are conventional and generic. *See id.*, 2:23-25 (acknowledging secure communication pathways such as proxies and VPNs were commonplace); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive"). UMBRA's Amended Complaint does not plausibly allege otherwise. For example, UMBRA alleges that the claimed method requires "specific, claimed mechanisms for selecting among multiple, simultaneously-maintained secure connections to region-specific devices based on an explicit target-region indication," but this allegation merely describes conventional networking technology being employed to implement the abstract idea of retrieving content based on region. Amended Complaint ¶ 44.

The limitations of the dependent claims also provide no inventive concept. Claim 4 specifies that the devices communicate using a secure tunnel, which, again, was a known and conventional type of network connection. '329 patent, cl. 4. Claim 5 adds that the target region is a local region to one of the client devices—the most obvious region to target. *Id.*, cl. 5. Claim 15 recites that the request will include an unresolved domain name that requires a DNS lookup. The patent, however, admits that DNS lookups are a conventional part of "how the internet works

without and with content delivery networks (CDN) delivering content from Host Servers to Host Clients." *Id.*, 5:27-29; *see also id.*, cl. 15.

The asserted claims also lack an inventive concept when considered as an ordered combination. Both independent claims recite a straightforward method for receiving a request for content, forwarding it based on region, and then relaying the delivered content back to the requester. And, as explained above, the other limitations merely recite conventional networking components and functionalities that are used to carry out this basic transaction. In other words, the claims recite the fundamental idea of delivering content based on region, as applied in the context of internet content networks. *FairWarning*, 839 F.3d at 1094 (explaining claims are abstract because they "merely implement an old practice in a new environment").

Because the claims contain nothing sufficient to ensure that they "amount[] to significantly more than a patent upon" the abstract idea, the asserted claims of the '329 patent are ineligible. *Alice*, 573 U.S. at 217–18 (quoting *Mayo*, 566 U.S. at 72–73).

### E.       This Case Is Ripe for Dismissal with Prejudice.

The plain language of the asserted claims and the indisputable disclosures of the Asserted Patents' specifications demonstrate that the asserted claims are invalid under Section 101. The claim terms are not complicated or difficult to understand such that construing the claims would reveal some non-abstract or inventive aspect that was not apparent prior to construction. Indeed, during the Court's mandatory meet and confer on the issue of the necessity of claim construction in connection with Zscaler's prior motion, UMBRA did not identify a single claim term for which construction would be material to the Section 101 analysis. Nor did UMBRA identify any such constructions in the corresponding joint letter to the Court submitted for Zscaler's prior motion. Dkt. No. 40. Nor has UMBRA raised any necessary constructions in its Amended Complaint. Instead, UMBRA has only made vague suggestions that claim construction is needed. As the

Federal Circuit has explained, that cannot delay ruling on a motion to dismiss.  *See Trinity Info*, 72 F.4th at 1361 (holding ineligibility determinations should be made prior to claim construction unless the patentee "propose[s] a specific claim construction or identif[ies] specific facts that need development and explain[s] why those circumstances must be resolved"); *Cleveland Clinic Found*, 859 F.3d at 1360 (affirming ineligibility where patentee "provided no proposed construction of any terms or proposed expert testimony that would change the § 101 analysis").

The Court should dismiss the claims with prejudice because any amendment would be futile.  In an attempt to overcome Zscaler's ineligibility showing in its motion for judgment on the pleadings, UMBRA amended its complaint and added over 50 new paragraphs in a vain effort to buttress its abstract claims against dismissal.  Amended Complaint ¶¶ 13-77.  But no additional allegations can change the fact that the Asserted Patents' specifications and the asserted claims themselves make clear that the claimed inventions are nothing more than abstract ideas implemented in a generic computer network environment.  *See Data Scape Ltd. v. W. Digital Corp.*, No. 18-2285-DOC, 2019 WL 6391616, at *3 (C.D. Cal. July 12, 2019), *aff'd,* 816 F. App'x 461 (Fed. Cir. 2020) ("Dismissal on the pleadings without leave to amend was therefore appropriate, as leave to amend would only allow Plaintiff to change its complaint, and not the contents of the Asserted Patents."); *see also HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 346 (5th Cir. 2021) (affirming dismissal with prejudice, as the "defect [in the pleading] cannot be cured").

## IV.     CONCLUSION

For the foregoing reasons, UMBRA's Amended Complaint should be dismissed with prejudice.

Dated:  August 7, 2026

Respectfully submitted,

*/s/ Melissa R. Smith*
Melissa R. Smith (TX Bar No. 24001351)
GILLAM & SMITH LLP
303 South Washington Avenue
Marshall, TX  75670
Tel: (903) 934 8450
Fax: (903) 934 9257
melissa@gillamsmithlaw.com

Jared Bobrow (CA State Bar No. 133712)
*(Lead Counsel)*
Jason Lang (CA State Bar No. 255642)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:  (650) 614 7400
Facsimile:  (650) 614 7401
jbobrow@orrick.com
jlang@orrick.com

Adil Shaikh (TX State Bar No. 24117039)
ORRICK, HERRINGTON & SUTCLIFFE LLP
200 West 6th Street, Suite 2250
Austin, TX 78701
Telephone:  (512) 582 6905
Facsimile:  (512) 582 6949
ashaikh@orrick.com

Will Melehani (CA State Bar No. 285916)
Lute Yang (CA State Bar No. 341813)
(*pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone:  (415) 773 5700
Facsimile:  (415) 773 5759
wmelehani@orrick.com
lute.yang@orrick.com

*Attorneys for Defendant Zscaler, Inc.*

- 31 -

### CERTIFICATE OF COMPLIANCE WITH THE COURT'S
### 35 U.S.C. § 101 MOTION PRACTICE ORDER


_____    The parties **agree** that prior claim construction is not needed to inform the Court's analysis as to patentability.

_X_    The parties **disagree** on whether prior claim construction is not needed to inform the Court's analysis as to patentability.


By:  _/s/ Jared Bobrow_____
Jared Bobrow

- 32 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 7, 2026, a copy of the foregoing was served electronically, via CM/ECF, on all counsel of record who are deemed to have consented such service under the Court's local rules.

By:  */s/ Melissa Smith*
Melissa Smith